PEOPLE v. ENGLE.

1. INTOXICATING LIQUOR — CIDER — QUASHING INFORMATION — EVIDENCE—SUFFICIENCY.

In a prosecution for violating the liquor law (Act No. 53, Pub. Acts 1919), based on defendant's possession of intoxicating cider ready for sale as a beverage, testimony at the preliminary examination by an analyst that the cider tested 2.58 per cent. and upwards alcohol by volume was sufficient, without any further evidence, to justify denial of defendant's motion to quash the information on the ground that there was insufficient evidence that the cider was intoxicating.

2. SAME—"CIDER" DEFINED.

In law "cider" means the fermented juice of apples.

3. SAME—ALCOHOLIC CONTENT QUESTION OF FACT.

As to whether cider is intoxicating, whether it contains alcohol, held, a question of fact.

4. SAME—CRIMINAL LAW—EVIDENCE—DIRECTED VERDICT.

Testimony that defendant had in his possession for sale as a non-intoxicating beverage cider which in fact was intoxicating, held, to justify refusal of a directed verdict in defendant's favor.

As to what liquors are within statutory restrictions as to the sale of "spirituous" "vinous" "fermented," and other intoxicating liquors, see note in 20 L. R. A. 645.

As to whether statutes forbidding the sale of a certain class of liquor include nonintoxicating liquor, see notes in 20 L. R. A. (N. S.) 1146; 26 L. R. A. (N. S.) 895; 46 L. R. A. (N. S.) 759; L. R. A. 1917B, 974.

5. SAME—SWEET CIDER MAY BE SOLD AS A BEVERAGE.

Fruit juice or sweet cider may be made and sold and used as a beverage without treatment to prevent fermentation since it does not fall within the provisions of section 3, Act No. 53, Pub. Acts 1919, defining intoxicating liquors as including "all mixtures, compounds or preparations, whether liquid or not, which, when mixed with water or otherwise, produce by fermentation or otherwise, an intoxicating liquor," nor does the exception contained in section 9 of said act limit the manufacture and sale of sweet cider to the purposes of making vinegar or unless fermentation thereof is prevented. FELLOWS, C. J., and CLARK and SHARPE, JJ., dissenting.

Exceptions before judgment from Jackson; Williams (Benjamin), J. Submitted October 13, 1921. (Docket No. 172.) Decided February 8, 1922.

William E. Engle was convicted of violating the liquor law. Affirmed.

*John F. Henigan,* for appellant.

*M. Grove Hatch,* Prosecuting Attorney, and *Arthur W. Wiggins,* Assistant Prosecuting Attorney, for the people.

CLARK, J. The first count of the information charged that the defendant unlawfully had in his possession a certain quantity of malt, brewed, fermented, spirituous and intoxicating liquors, to wit, six barrels of cider, the second count that he had unlawfully manufactured the same, and the third count that he kept a place where such liquors, namely cider, were manufactured, sold, stored for sale, given away and furnished. A motion to quash the information on the ground that there was no testimony at the preliminary examination that the cider was intoxicating except that of an analyst that the samples tested 2.58 per cent. and upwards alcohol by volume, was denied.

Defendant was engaged in the manufacture and sale of vinegar and in what he claimed to be sweet or non-intoxicating cider. For his purpose he bought apple juice or cider in considerable quantities, sometimes in car lots. Inspectors of the food and drug department visited his place of business and took samples of cider from several barrels which, it is claimed, defendant had prepared for sale as a beverage, non-intoxicating cider, and from other barrels of cider which defendant claimed were to be made into vinegar. The alcoholic content of the samples we have stated. Defendant was convicted and has appealed.

1. Refusal to quash the information. The cider, which the prosecution claimed defendant manufactured, possessed and had ready for sale as a beverage, as stated, contained alcohol as shown by the analysis. Further proof that it was intoxicating was not required. Section 3 of Act No. 53, Pub. Acts 1919, provides:

"The phrase 'intoxicating liquors,' wheresoever used in this act, shall be held and construed to include any vinous, malt, brewed, fermented or spirituous liquors, and every other liquor or liquid containing intoxicating properties ·which is capable of being used as a beverage, or will produce intoxication, whether medicated or not, and all liquids, whether proprietary, patented or not, which contain any alcohol and are capable of being used as a beverage; and all mixtures, compounds or preparations, whether liquid or not, which when mixed with water or otherwise, produce, by fermentation or otherwise, an intoxicating liquor."

And see *People* v. *Emmons*, 178 Mich. 126 (Ann. Cas. 1915D, 425), and cases cited.

2. Refusal to direct a verdict as requested by defendant. The section of the statute above quoted forbids the making of cider, the taking of the juice from the fruit, because such juice or cider is a liquid preparation which will produce by fermentation an

intoxicating beverage. But a subsequent section of the act (§ 9) contains this exception:

"The provisions of this act shall not be construed to prevent the manufacture of cider from fruit, for the purpose of making vinegar, and non-intoxicating cider and fruit juice for use and sale." *    *    *

In law cider means the fermented juice of apples, but we think the word was used in the statute in its popular sense and was intended to include the expressed juice of apples either fermented or unfermented, and we shall use the popular terms "sweet cider" and "hard cider" to distinguish between the juice of the apple before and after fermentation. See *People* v. *Emmons, supra.* The exception, so far as it now concerns defendant, gave him two privileges: (*a*) the manufacture of cider from fruit for the purpose of making vinegar and (*b*) the manufacture of cider from fruit for the purpose of making non-intoxicating cider.

In sweet cider, fermentation soon begins and unless the process is arrested hard cider with considerable percentage of alcohol follows. Further acetic fermentation changes the hard cider into vinegar, the alcohol being changed into acid for the vinegar. Cider may be manufactured and, whether sweet or hard, may be possessed, bought, sold, and transported for the purpose of making vinegar, but always in good faith. The purpose must be honest. And, as we have seen, it is not unlawful to manufacture cider from fruit for the purpose of making non-intoxicating cider. To accomplish this the fruit juice or cider must be free from alcohol, or sweet as commonly said. The cider may be used as a beverage while sweet. But if it is to be kept for drinking, prepared for sale, or sold as a beverage, the preparation must not be one, though then sweet, that will produce by fermentation an in-

toxicating beverage. Fermentation must be prevented. The prevention must not be temporary or inadequate. It must be effectual and adequate. That this may be accomplished, if at all, only with difficulty affords no reason or excuse for ignoring the statutory requirements. Because of the evidence of the people to the effect that defendant had prepared cider and had it in his possession at his place of business ready for sale as a beverage, as non-intoxicating, and that such cider contained alcohol, the motion for a directed verdict was properly denied. Whether cider is intoxicating, whether it contains alcohol, is a question of fact. That defendant attempted in good faith to arrest fermentation by introducing benzoate of soda, that he was a reputable manufacturer, that he had not heretofore offended, are matters to be addressed to the conscience of the trial court.

3. The charge. The following excerpt from the charge is criticized:

"I think, however, it is necessarily implied in the term 'non-intoxicating cider,' that the quality of being 'non-intoxicating' should be of a permanent nature. In other words, I do not think it is the intent of the law that a person could claim the benefit of the exemption of section 9, as to 'non-intoxicating cider' where he put out a product which at the time of leaving his control might be non-intoxicating, but which by a small lapse of time, and of necessity through chemical changes would later become intoxicating. If he desires to manufacture 'non-intoxicating cider' within the terms of the exemption in the statute, I think he must make it in such manner that it will stay non-intoxicating. Any other construction would make the law unworkable."

It follows from what has been said that this was not error. And the court protected defendant as to his right to make vinegar and non-intoxicating cider by saying to the jury:

"Now, the respondent in this case would not have the right to manufacture, keep for sale, or have in his possession cider that was in fact intoxicating, except for the single honest purpose of making, vinegar."

—and

"Now, as applicable in this case, I think this (the statute) means that the respondent, Engle, would have a right to manufacture cider from fruit for the *bona fide* purpose of making vinegar and to have the same on hand during the necessary process of fermentation, and that he would also have a right to manufacture non-intoxicating cider for use and sale."

The other assignments are without merit. We find no reversible error. The conviction is affirmed. The cause is remanded. The court may proceed to judgment.

FELLOWS, C. J., and SHARPE, J., concurred with CLARK, J.

WIEST, J. (*concurring in part*). I concur in affirming the conviction but not in the holding that the liquor law prevents "sweet cider" from being made and sold, except for vinegar, unless fermentation thereof is prevented. In my opinion the case at bar presents no such question, but, even so, I cannot let the holding go without dissent.

Unfermented apple juice, commonly known as sweet or new cider, does not fall within the act at all. The act relates solely to intoxicating liquors, and to avoid any possible misconstruction expressly provides that:

"The provisions of this act shall not be construed to prevent the manufacture of cider from fruit, for the purpose of making vinegar, and non-intoxicating cider and fruit juice for use and sale."

Accepting the meaning of the word "cider" when employed in a statute as inclusive of both sweet and hard cider we still have in this act the legislative

declaration that it does not cover the manufacture, sale and use of non-intoxicating cider and fruit juice. Non-intoxicating cider consists of sweet cider and also cider in which fermentation has been arrested and further fermentation prevented previous to its becoming an intoxicant. But the act does not stop with the use of the words "non-intoxicating cider," but also employs the words "and fruit juice." And this means, beyond all question, sweet cider.

Fruit juice or sweet cider may be made and sold and used as a beverage without treatment to prevent fermentation. If new cider purchased while sweet ferments and becomes intoxicating the risk of having the same, except for vinegar, falls upon the possessor.

I cannot concur in the opinion that the provision in the act defining intoxicating liquors as including "all mixtures, compounds or preparations, whether liquid or not, which, when mixed with water or otherwise, produce, by fermentation or otherwise, an intoxicating liquor," has any reference at all to fresh made sweet cider. Non-intoxicating cider, made so by arresting fermentation and thereby permitting it to be sold after the period of its being sweet would otherwise be departed, must be effectual and permanent.

Stone, Bird, Moore, and Steere, JJ., concurred with Wiest, J.