PEOPLE *v.* ANGELLO.

**1.** INTOXICATING LIQUORS—ILLEGAL POSSESSION.

Although, under section 9, Act No. 338, Pub. Acts 1917, grape juice may be manufactured and used as a beverage, yet, when fermented to contain 4.9 per cent. alcohol by volume, it is intoxicating liquor within the meaning of sections 2 and 3 of said act, as amended by Act No. 53,

Pub. Acts 1919, and its possession for use as a beverage is illegal.[1]

2. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—CURING ERROR.

　　Error in admitting in evidence a sample bottle of wine, where the officer testifying had not taken it from the barrel or seen it taken therefrom, was cured by the later testimony of another officer that he had taken it from the barrel and handed it to the first officer.[2]

Exceptions before judgment from superior court of Grand Rapids; Verdier (Leonard D.), J. Submitted January 14, 1926. (Docket No. 141.) Decided March 20, 1926.

Jake Angello was convicted of violating the liquor law. Affirmed.

*Irving H. Smith*, for appellant.

*Andrew B. Dougherty*, Attorney General, *Earl W. Munshaw*, Prosecuting Attorney, and *Peter A. Hartesveldt*, Assistant Prosecuting Attorney, for the people.

SHARPE, J. Defendant here reviews his conviction of a violation of the prohibition law by having in his possession 50 gallons of grape wine, alleged to be intoxicating liquor, on exceptions before sentence. His counsel concedes that "the facts are virtually without dispute on either side." The record discloses that on February 28, 1925, a police officer of the city of Grand Rapids, armed with a search warrant, the legality of which is not questioned, searched the home of the defendant, and found in the basement thereof about 50 gallons of grape wine, which, on analysis, contained 4.9 per cent. of alcohol by volume. The defendant as a witness testified that there was in the basement about 20 gallons of wine; that he made it the preceding October or November by squeezing the juice out of

[1]Intoxicating Liquors, 33 C. J. § 65; [2]Criminal Law, 17 C. J. § 3673.

grapes and putting it into barrels; that he put nothing else into the barrels, and that the liquor contained no alcohol.    It appears that there was a furnace in the basement, and also that the barrels were placed where the sun could shine upon them a certain part of the day.

1. At the close of the proofs, defendant's counsel moved for a directed verdict of not guilty.    Error is assigned on the denial of this motion.    It was based upon the provision in section 9 of the prohibition act (Act No. 338, Pub. Acts 1917 [Comp. Laws Supp. 1922, § 7079 (9)]), which reads as follows:

"The provisions of this act shall not be construed to prevent the manufacture of cider from fruit, for the purpose of making vinegar, and nonintoxicating cider and fruit juice for use and sale," etc.

This provision must be considered with sections 2 and 3 of the act, as amended by Act No. 53, Pub. Acts 1919.    Section 2 provides that:

"It shall be unlawful for any person  *  *  *  to *  *  *  have in possession any vinous,  *  *  * spirituous or intoxicating liquors," etc.

The phrase "intoxicating liquors" is defined in section 3—

"to include any vinous,  *  *  *  fermented . or spirituous liquors, and every other liquor or liquid containing intoxicating properties which is capable of being used as a beverage, or will produce intoxication,  *  *  *  and all liquids  *  *  *  which contain any alcohol and are capable of being used as a beverage," etc.

There can be no question but that grape juice may be used as a beverage or that such juice, when fermented so as to contain 4.9 per cent. of alcohol by volume, contains alcoholic properties, and is intoxicating.    *People* v. *McCoy,* 217 Mich. 575, 577.    In *People* v. *Engle,* 217 Mich. 334, 340, it was said:

"Nonintoxicating cider consists of sweet cider and also cider in which fermentation has been arrested and further fermentation prevented previous to its becoming an intoxicant. But the act does not stop with the use of the words 'nonintoxicating cider,' but also employs the words 'and fruit juice.' And this means, beyond all question, sweet cider.

"Fruit juice or sweet cider may be made and sold and used as a beverage without treatment to prevent fermentation. If new cider purchased while sweet ferments and becomes intoxicating the risk of having the same, except for vinegar, falls upon the possessor."

The defendant had a right to manufacture the fruit juice. But, when he kept it in his possession for use as a beverage after it fermented and became intoxicating, he violated the law.

2. Error is assigned upon the admission in evidence of a sample bottle of the wine, for the reason that Officer Coe, then on the stand, had not himself taken it from the barrel or seen it taken therefrom. Officer Spoelstra afterwards testified that he "took a sample out of the large barrel" and "handed it to Coe." The error complained of was thus effectually cured and could not have resulted in prejudice to the defendant.

3. Other errors as to the admission of testimony and the instructions given the jury have been considered, and in our opinion are without merit.

The exceptions are overruled. The trial court will proceed to sentence.

BIRD, C. J., and SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.