## PEOPLE *v.* THOMPSON.

1. SEARCHES AND SEIZURES — AFFIDAVITS — WARRANT MAY ISSUE ONLY ON EXISTING FACTS.

Search warrants may not issue on rumor or general repute, but only upon facts existing at the time the showing is made for the warrant.

2. INTOXICATING LIQUORS—AFFIDAVITS, SUFFICIENCY—ODOR OF INTOXICATING LIQUORS.

An affidavit for a search warrant stating that affiant is familiar with the odor of whisky mash, that on a certain date he detected a strong odor of whisky mash coming from defendant's premises, and that home brew was then in process of being made upon said premises, was sufficient for the issuance of the warrant.

3. SAME—ODOR—VARIANCE.

Although an affidavit for a search warrant stated that the odor affiant smelled coming from defendant's premises was that of whisky mash, and at the hearing of the motion to suppress the evidence, he testified that the odor was that of intoxicating liquor, there was no fatal variance.

4. SAME—STATUTES—ODOR—PRIVATE DWELLING—POOL ROOM.

Act No. 382, Pub. Acts 1925, providing that no statement

---

[1]Searches and Seizures, 35 Cyc. p. 1266; [2]Intoxicating Liquors, 33 C. J. § 371; [3]Id., 33 C. J. § 374; [4]Id., 33 C. J. § 371.

by affiant that he has smelled the odor of intoxicating liquor in or about a private dwelling, occupied as such, shall constitute probable cause for the issuance of a search warrant, has no application where said odor is detected coming from a pool room.

5. CRIMINAL LAW—EVIDENCE—DRUNKENNESS.
    In a prosecution for keeping a place where intoxicating liquors were illegally stored and possessed, it was prejudicial error to admit testimony of defendant's drunkenness during the year previous to his arrest.

6. APPEAL AND ERROR—ADMISSIBILITY OF EVIDENCE FOR PARTICULAR PURPOSE—ASSUMPTIONS.
    In considering the admissibility of testimony in a prosecution for illegal possession of intoxicating liquors, it is indispensable that the Supreme Court consider the purpose of its introduction and the particular point to be proved thereby, and, in connection therewith, must assume that the trial judge, in ruling testimony admissible without comment, approved of the purpose stated by the prosecutor.

7. INTOXICATING LIQUORS—NECESSARY TO SHOW THAT FERMENTED LIQUORS WERE INTOXICATING WHEN SEIZED.
    Where, in a prosecution for illegal possession of intoxicating liquors, the alcoholic content of liquors introduced in evidence was present by reason of fermentation, it was necessary for the prosecution to show that they were intoxicating at the time of seizure, and thus negative the possibility that they became intoxicating thereafter.

Exceptions before judgment from Allegan; Cross (Orien S.), J. Submitted January 14, 1927. (Docket No. 163.) Decided April 1, 1927.

Eli Thompson was convicted of violating the liquor law. Reversed.

*Clare E. Hoffman,* for appellant.

*William W. Potter,* Attorney General, and *John H. Bloem,* Prosecuting Attorney, for the people.

---

⁵Criminal Law, 16 C. J. §§ 1132, 1173; 17 C. J. § 3662; Intoxicating Liquors, 33 C. J. § 535; ⁶Criminal Law, 17 C. J. §§ 3549 (Anno), 3569 (Anno); ⁷Intoxicating Liquors, 33 C. J. § 527 (Anno).

WIEST, J.   Defendant was convicted of keeping a place where intoxicating liquors were stored and possessed, in violation of the prohibition law, and prosecutes review on exceptions before sentence.   Before trial he moved to suppress the evidence, seized under search warrant, claiming the showing for the warrant was insufficient.   The motion to suppress was denied.   Defendant alleges error.

We quote from the affidavit made before the magistrate:

"That affiant is city manager of said city of Otsego, and by virtue of said office is chief of police of said city and in the course of his official duties has received several complaints from various adult persons during the past year immediately preceding the date of this affidavit that intoxicating liquors are being unlawfully made, and possessed, upon and in and about said premises (before described) or some part thereof, and that affiant is familiar with the general reputation of said premises in reference to being a place where intoxicating liquors are kept and that its present reputation is bad in that respect."

At this point we pause to point out that search warrants may not issue on rumor or general repute but only upon *facts* existing at the *time* the showing is made for the warrant.   *People* v. *Chippewa Circuit Judge,* 226 Mich. 326; *People* v. *Mushlock,* 226 Mich. 600; *People* v. *Musk,* 231 Mich. 187, and cases there cited.   What we have quoted from the affidavit was no showing at all for the warrant, but the affidavit further stated:

"That affiant is familiar with the odor of whisky mash or grain mash, a concoction out of which whisky, sometimes known as moonshine or home brew whisky, is made, having handled large quantities of the same; that on the 10th day of May, 1926, while affiant was in the Al. Burgess store by invitation, which said Burgess store adjoins said premises as aforesaid, and was near the building on said premises he smelled and

detected a strong odor of whisky mash, coming from the basement and ground floor of said building on said premises, and from the buildings thereon or some part thereof, and affiant says that home brew whisky was then in the process of being made upon said premises by those persons using and occupying the same."

At the hearing of the motion to suppress, the maker of the affidavit for the search warrant was examined in court, and we quote from his testimony:

"*Q.* You say you are familiar with the odor of whisky mash or grain mash?

"*A.* No, sir.

"*Q.* You are not?

"*A.* No, I am not acquainted with it. You asked me if I was acquainted with mash.

"*Q.* I asked you if you were familiar with the odor of whisky mash or grain mash?

"*A.* Yes, I am acquainted with the smell of something that smells like hard cider, or on that order.

"*Q.* Well did you ever smell any whisky mash?

"*A.* No, sir.

"*Q.* Or did you ever smell any whisky mash out of which whisky or moonshine was being made?

"*A.* No, sir.

"*Q.* You never did?

"*A.* No, sir.

"*Q.* You never smelled the odor of whisky mash or grain mash coming from this Thompson building, did you?

"*A.* Well I smelled something that indicated hard cider.

"*Q.* Hard cider?

"*A.* I couldn't tell what it was.

"*Q.* Now on the 10th day of May did you smell some odor coming from this building that was that of whisky mash or grain mash?

"*A.* Well I think that is about the date that I smelled something that didn't smell right to me.   *   *   *

"*Q.* You never smelled the odor of whisky coming from the premises did you on the 10th day of May?

"*A.* I couldn't tell what it was; I could smell something wrong, but I couldn't tell what it was.   *   *   *

"*Q.* Now, the odor that you noticed coming from the Thompson pool-room building there, would you say it was like an intoxicating liquor?

"*A.* Smelled that way to me; yes, sir."

This testimony in support of the search warrant measures up to some of our decisions. We are not inclined to hold that, because in the affidavit he stated the odor he smelled was that of whisky mash, and later testified the odor was that of intoxicating liquor, there was a fatal variance.

In *People* v. *Schregardus,* 226 Mich. 279, we held that the sense of smell might be employed in detecting liquor upon premises. Later the legislature, by Act No. 382, Pub. Acts 1925, enacted:

"No statement of any person in such sworn complaint or affidavit that such person has smelled the odor of intoxicating liquor in the process of manufacture or otherwise in or about a private dwelling occupied as such, shall constitute probable cause for the issuance of a search warrant under this act for the search of such dwelling."

This enactment modified our decision only with reference to private dwellings occupied as such. The statute has no application to the case at bar for the odor smelled was from a pool room and not a private dwelling.

At the trial the court permitted, over objection, testimony that defendant was intoxicated on several occasions during the year preceding the date of the arrest. One witness was permitted to testify that the day before the search warrant was issued he saw defendant and he acted as though he might be getting drunk at that time. Another witness testified that during the night, immediately preceding the search and seizure, he saw defendant in an intoxicated condition, and also intoxicated in November, 1925, or six months before the search warrant issued. The

record is persuasive that the court ruled such evidence was admissible for its bearing upon the intoxicating properties of the liquor seized, because, in ruling on the admissibility of testimony showing the condition of defendant the day before the search warrant was taken out, the prosecuting attorney, in reply to an objection that such testimony was incompetent and prejudicial, stated it had a bearing on the question of the intoxicating nature of the liquor seized. Upon the question of the admissibility of evidence of defendant's drunkenness during the year previous to his arrest, it is indispensable that we consider the purpose of its introduction and the particular point intended to be proved thereby. The trial judge made no comment in ruling the testimony admissible, and we must assume, as the jury had a right to understand, that the judge approved of the purpose stated by the prosecutor. It does not comport with established procedure to accuse a person of one crime and then compel him to acquit himself of two. The ultimate inference sought by the prosecutor was too dubious and labored to merit consideration, and the testimony was well calculated to prejudice the minds of the jury without carrying with it any proper evidence of defendant's guilt upon the particular charge made. This testimony was incompetent and highly prejudicial. Defendant was not charged with being intoxicated, nor was he on trial for acts of drunkenness. Defendant was not a witness.

Under the search warrant officers seized, on defendant's premises, occupied as a pool room and ostensibly a soft drink place, two eight-gallon kegs and contents, and, not being able by taste and smell to tell just what they had seized, took samples to a chemist for analysis. The seizure was on May 11th, and the analysis, made on May 15th, disclosed in one sample an alcoholic content by volume of 9.35 per cent. and

in the other 12.8 per cent.    The chemist also testified, with reference to one sample analyzed, that he did not know what the beverage was, but it smelled as though it might be some sort of wine, and he called it liquor and did not at all identify the kind of liquor in the other sample.    He also testified:

"If these kegs contained sweet cider, the time it would take for it to ferment, if the cider saver or whatever they put in to preserve it didn't act, would depend a whole lot on the temperature of the room; it is my belief it was only a matter of a few days before you can get an alcoholic test out of sweet cider and the same way with grape juice, if it starts to ferment.    Shaking it up, keeping it in a warm place, putting it in a keg, putting wine in cider, that will hasten it, I think.

"I could not answer how long it would take to have enough alcohol to be intoxicating, but it would be only a matter of a few days before alcohol is present.

"*Q.* How long would you say it would be before it reached the point of 9 or 12 per cent.?

"*A.* Oh, I suppose my guess would be as good as anybody's; might say within a week or two.

"*Q.* You don't know?

"*A.* No."

The stuff, whatever it was, was intoxicating liquor of some sort, when analyzed on May 15th, but the question of guilt necessarily turned upon whether it was intoxicating liquor on May 11th, when seized. The evidence failed to show what kinds of liquor were in the kegs.    If cider and grape juice, unfermented, and without alcoholic content, then it was not unlawful to possess, and even vend the same.    *People* v. *Engle,* 217 Mich. 334.    It is evident, however, that the alcoholic content was present by reason of fermentation.    Such being the fact, it was for the prosecution to show that the liquor was intoxicating at the time of seizure and thus negative the possibility that it became intoxicating after seizure.

238—Mich.—12.

For the error in admitting testimony of defendant's habits of intoxication, the conviction is reversed and a new trial granted.

BIRD, SNOW, STEERE, FELLOWS, and CLARK, JJ., concurred.    SHARPE, C. J., and McDONALD, J., concurred in the result.