PEOPLE *v.* HAGADORN.

1. SEARCHES AND SEIZURES—SEARCH WITHOUT WARRANT.
   Facts necessary to be shown to uphold search without warrant must be strong enough to support issuance of search warrant.

2. SAME—WHEN SEARCH WARRANTS MAY ISSUE.
   Search warrants may not issue on rumor or general repute, but only on facts existing at time showing is made for warrant.

3. CRIMINAL LAW—SEARCHES AND SEIZURES—INTOXICATING LIQUORS —EVIDENCE.
   Anonymous information received by officer, who had no knowledge of informant's identity or responsibility, was insufficient to authorize search of defendant's person for intoxicating liquors without warrant, and therefore evidence so obtained was inadmissible at his trial on charge of illegal possession.

Appeal from Lenawee; Rathbun (G. Arthur), J. Submitted June 11, 1931. (Docket No. 145, Calendar No. 35,705.) Decided June 25, 1931.

Ralph Hagadorn was convicted of having unlawfully possessed intoxicating liquor. Reversed, and new trial ordered.

*James W. Helme,* for appellant.

*Paul W. Voorhies,* Attorney General, and *Major Bird,* Prosecuting Attorney, for the people.

POTTER, J.   January 2, 1931, Harold Treat, a deputy sheriff, complained that on December 31, 1930, defendant, in Lenawee county, did unlawfully possess a certain quantity of intoxicating liquor, to wit: two pints of whisky. Defendant was arrested,

and, on examination before a justice, on January 12, 1931, the deputy sheriff was sworn. He testified he knew defendant; there had been reports from several sources that defendant was selling liquor at Ridgeway, and for that reason he was down there, saw defendant come out of the dance hall and go into a room below the dance hall, whereupon witness went into this room. A partly filled bottle of liquor was found on the floor. After making some investigation, defendant was searched and two pints of moonshine found on his person. Motion was made to suppress this evidence upon the ground the search was illegal, which motion the court overruled. Upon the trial of the case the objection was again renewed, overruled, and defendant convicted, and he brings error.

The right of search and seizure did not exist at early common law, but crept into the law by imperceptible practice. 4 Coke's Institutes, 176; *Entick* v. *Carrington,* 19 Howell's State Trials, 1029; *Boyd* v. *United States,* 116 U. S. 616 (6 Sup. Ct. 524).

In *People* v. *Marxhausen,* 204 Mich. 559 (3 A. L. R. 1505), and the dissenting opinion in *People* v. *Case,* 220 Mich. 379 (27 A. L. R. 686), is a recital of some historical facts leading to the adoption of the constitutional prohibition of unreasonable search.

When the Constitution of the United States was adopted, it was contended by its advocates it created a government of delegated powers and all powers not delegated to the United States were reserved to the States and to the people, but so tenacious were the colonists of the liberty which they had secured that the Constitution of the United States was only adopted upon the tacit agreement it would be amended so as to contain a bill of rights protect-

ing individual liberty. The Fourth Amendment to the Constitution of the United States was proposed in the first session of the first congress and adopted by the requisite number of States in 1791. It provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

And section 10 of article 2 of the Constitution of Michigan provides:

"The persons, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation."

In *People* v. *Halveksz,* 215 Mich. 136, it is said:

"Under a government of laws the security afforded persons, houses, and possessions against search without a warrant, lawfully obtained, must not be violated by officers of the law. The law must point the way to legitimate search and seizure and will tolerate none other. Officers of the law must act within the law and if they invade the security guaranteed individuals by the Constitution, such invasion cannot bring to the aid of justice the fruit of their violation. It is the duty of courts, when attention is seasonably called to a violation of a constitutional right, in obtaining evidence in criminal prosecutions, to vindicate the protection afforded individuals by the Constitution, and suppress such evidence. The trial court was in error in not sup-

pressing the evidence and in receiving the same at the trial and in the instruction given the jury.''

The facts necessary to be shown to uphold a search without a warrant must be strong enough to support the issuance of a search warrant.

''Search warrants may not issue on rumor or general repute but only upon facts existing at the time the showing is made for the warrant.'' *People* v. *Thompson*, 238 Mich. 171.

There is no difference in effect between issuing blanket authority by warrant to executive officers to search and vesting executive officers with the right to search in the exercise of their discretion. The defendant was not arrested prior to search. The officer testified: ''When I found these two bottles under Hagadorn's belt he was placed under arrest.'' The search occurred prior to arrest. Undoubtedly, the defendant would not have been arrested but for the result of the search. The reasonableness of search is not measured by results but determined by the information which the officer had prior to making it. The officer testified he had information defendant was a bootlegger. This information he claimed was anonymous. He did not know from whom it came, where the party lived who gave it to him, whether his informant was responsible or irresponsible, whether such informant gave him information upon hearsay or claimed to have personal knowledge. No proof was submitted to the officer. No affidavits were filed. No search warrant issued. The officer's information was insufficient to authorize a search of defendant's person. It left too much room for the operation of imagination. The motion

to exclude the testimony relating to the search and the evidence found thereby should have been granted. Conviction reversed. New trial ordered.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, SHARPE, NORTH, and FEAD, JJ., concurred.