DAWKINS *v.* DETROIT POLICE COMMISSIONER.

DECISION OF THE COURT.

1. MANDAMUS — RETURN OF PROPERTY — SEARCHES AND SEIZURES WITHOUT WARRANT — CONSENT.

Denial of writ of mandamus to compel police commissioner to return property seized at plaintiff's apartment without arrest or search warrant is affirmed under record presented, wherein trial court had found the search of the premises by police officers had been conducted with the consent of the apparent custodian.

DISSENTING OPINION.

T. M. KAVANAGH, C. J., and SOURIS and ADAMS, JJ.

2. MANDAMUS—SEARCHES AND SEIZURES—RECOVERY OF PROPERTY.

*Mandamus will lie to recover property seized by police officers during an unreasonable search and seizure (Const 1963, art 1, § 11).*

3. SEARCHES AND SEIZURES—ARREST—RECOVERY OF PROPERTY.

*Search of premises and seizure of property may accompany a lawful arrest, but when police activity does not indicate that they have probable cause for arrest, any search and seizure without a warrant is unreasonable, and any property taken by police will be returned by a proper action (Const 1963, art 1, § 11).*

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 34 Am Jur, Mandamus § 208.
[3] 47 Am Jur, Searches and Seizures § 19, 48.
  34 Am Jur, Mandamus § 208.
  Lawfulness of nonconsensual search and seizure without warrant, prior to arrest. 89 ALR2d 715.
[4, 5]. 47 Am Jur, Searches and Seizures §§ 19, 52.
[6, 10] 34 Am Jur, Mandamus § 208.
  47 Am Jur, Searches and Seizures § 48.
[7] 47 Am Jur, Searches and Seizures §§ 19, 52.
  5 Am Jur 2d, Arrest § 2.
[8] 47 Am Jur, Searches and Seizures § 52.
[9] 47 Am Jur, Searches and Seizures §§ 19, 52.
[11] 1 Am Jur 2d, Actions § 5.
[12] 47 Am Jur, Searches and Seizures §§ 52–54.
[13, 14] 47 Am Jur, Searches and Seizures §§ 16–19.
[15] 47 Am Jur, Searches and Seizures §§ 48, 72.
[16] 47 Am Jur, Searches and Seizures § 52.
[17] 34 Am Jur, Mandamus §§ 40, 41.
[18] 46 Am Jur, Replevin § 32.
[19] 46 Am Jur, Replevin § 23.
[20] 46 Am Jur, Replevin §§ 36, 37, 46.
  47 Am Jur, Searches and Seizures § 48.

4. SAME—IDENTITY OF PERSON SOUGHT TO BE ARRESTED—PROBABLE CAUSE.

*The seizure of various articles in plaintiff's residence to which access by police had been gained with the intention of searching for and arresting the plaintiff without a warrant held, not justified, where there is no testimony to link plaintiff with the person sought to be arrested, there being an absence of probable cause (Const 1963, art 1, § 11; CL 1948, § 764.15).*

5. SAME—ARREST—RECORD.

*The breaking in of doors of a residence in a police officers' search for plaintiff, claimed to have been done for the purpose of making an arrest of plaintiff, held, not to have been justified, where record does not support such claim (Const 1963, art 1, § 11; CL 1948, § 764.21).*

6. MANDAMUS—SEARCHES AND SEIZURES—PROBABLE CAUSE.

*Officers' forcible entry, search, and seizure of property on premises without a search warrant or probable cause for arrest of plaintiff held, unreasonable and plaintiff could have property returned to him by writ of mandamus.*

7. SEARCHES AND SEIZURES—LIMITATIONS—ARREST.

*The right to make a search of premises without a warrant for the arrest of the person sought is limited to a reasonable search of such part of the premises as where the arrest is to be made and limited to the purpose of seizure of things to be used as evidence of the crime committed (Const 1963, art 1, § 11; CL 1948, § 764.15).*

8. SAME—DUE PROCESS—PRESUMPTION OF INNOCENCE—SELF-INCRIMINATION.

*An unreasonable search and seizure by police that results in confiscating property is a denial of due process of law by compelling one to testify against himself in a civil action to recover the confiscated property, and deprives him of the presumption of innocence (Const 1963, art 1, § 11; CLS 1961, § 600.2920; GCR 1963, 757).*

9. ARREST—SEARCHES AND SEIZURES—CONFISCATION.

*An arrest may not be used as a pretext either to search without a warrant for evidence or to confiscate the property (Const 1963, art 1, § 11).*

10. SEARCHES AND SEIZURES—CONFISCATION—MANDAMUS.

*Plaintiff in mandamus proceedings to compel city police commissioner to return various articles taken from his residence and confiscated held, entitled to relief where articles seized had*

been taken as the result of a search declared to have been unreasonable (Const 1963, art 1, § 11; CL 1948, §§ 764.15, 764.21).

11. PLEADING—FORM OF ACTION.

The failure to choose the correct writ is the type of error which does not affect the substantial rights of the parties and should be disregarded (CLS 1961, § 600.2301; GCR 1963, 529.1).

SEPARATE OPINION.

DETHMERS, BLACK, and O'HARA, JJ.

12. SEARCHES AND SEIZURES—FRUITS OF ILLEGAL SEARCH.

The fruits of an illegal search and seizure cannot retroact to justify them.

13. SAME—WITHOUT WARRANT—PROBABLE CAUSE.

Police officer who had been advised that a tire had been stolen from a car, that an identified taxi driver reported a fare had left the cab and returned to it with a tire and wheel in the same vicinity and directed to go to place searched and that the fare would repeat the performance every night should the driver meet him, held, sufficient to establish probable cause for searching the premises without a warrant (Const 1963, art 1, § 11).

14. SAME—PROBABLE CAUSE.

The facts necessary to be shown to uphold a search without a warrant must be strong enough to support the issuance of a search warrant (Const 1963, art 1, § 11).

15. SAME—CONSENT—GREAT WEIGHT OF EVIDENCE.

Trial judge's determination that police officer's search of plaintiff's premises was with consent of the apparent custodian thereof is not disturbed on appeal from order denying writ of mandamus to compel return of articles taken from plaintiff's place of residence as result of search, claimed by plaintiff to be illegal, where not found to be against the great weight of the evidence.

16. FORCIBLE ENTRY—QUESTION OF FACT—EVIDENCE.

Question of forcible entry left to the trier of facts when testimony is in dispute as to whether officers made a forcible entry onto the premises.

17. MANDAMUS—DISCRETION OF COURT.

Mandamus is a discretionary writ.

18. Replevin—Unlawful Detention.

> *Replevin, now claim and delivery, is the remedy of one desiring to obtain possession of goods or chattels which he claims are his and is founded on an unlawful detention whether or not there was an unlawful taking.*

19. Same—Right to Possession.

> *The right to maintain replevin, or claim and delivery, may be denied where the plaintiff has no legal title to the property sought or fails to show any right to immediate possession thereof.*

20. Same—Illegally Seized Property—Remedy.

> *Replevin is the proper remedy for the recovery of goods illegally or unlawfully seized by police officers.*

Appeal from Wayne; Wise (John M.), J. Submitted February 5, 1965. (Calendar No. 42, Docket No. 50,623.) Decided May 10, 1065. Rehearing denied June 7, 1965.

Mandamus by James Dawkins against George Edwards, Police Commissioner for the city of Detroit, to compel return of personal property seized without arrest or search warrant. Writ denied. Plaintiff appeals. Affirmed.

*Marshall C. Hill* and *Wayne C. Garvin,* for plaintiff.

*Robert Reese,* Detroit Corporation Counsel, *William P. Doran* and *John E. Cross,* Assistant Corporation Counsel, for defendant.

Adams, J. (*dissenting*). This is a mandamus action. Plaintiff seeks the return of personal property seized in his apartment by the Detroit police. The trial judge denied the writ.

On February 26, 1963, about 4:30 a.m., a cab driver reported to the police department. He stated he was approached by a man about 25 years of age. He drove the man to an alley where the passenger got out, returning shortly with a new white sidewall

tire and wheel. He directed the driver to plaintiff's residence, and took the tire and wheel to the rear door of plaintiff's upstairs flat. The man suggested to the driver that, if he wished to "make a buck," he should meet him every night.

The same morning, at about 7:40, officers received a complaint that a new white sidewall tire and wheel had been stolen. The theft took place within the same block where the cab driver had earlier reported picking up the man with the tire. The Detroit police went immediately to plaintiff's residence. How they gained entrance is in conflict. The officers claim they were admitted voluntarily by a roomer. Wideman, the roomer, testified:

"*Q.* Just a moment, let's go back. You say you opened the door and were going out?

"*A.* That is right.

"*Q.* And there were two policemen?

"*A.* At the door.

"*Q.* What did they do, if anything?

"*A.* Pushed me back in the house, told me to sit down. * * *

"*Q.* What, if anything, happened after you sat down?

"*A.* They went in the kitchen and opened the back door and two more police officers went in."

The officers saw a new white sidewall tire and wheel in the kitchen near the rear entrance of the flat. They testified they asked the roomer where they could find plaintiff and that the roomer could give no information. They searched the premises and testified they did so with the intention of arresting the plaintiff. In the process they broke into a padlocked bedroom. The roomer testified as follows:

"*A.* They said 'Whose room is that?' I said 'That is the landlord room.'

"*Q*. Just a moment. Repeat that, please. After that, what happened?

"*A*. They said 'Whose room is that?' 'That is the landlord room.' They said, why do we keep it locked. I said 'I don't know why he keep it locked'. Then he took his foot two times and kicked it open.

"*Q*. Kicked the door open?

"*A*. Yes, kicked it open."

While the officers may have begun their search with the purpose of finding plaintiff, the actions of this four-man police detail and the events which transpired later indicate that this was not their purpose as they proceeded.

Wideman, the roomer, further testified:

"*Q*. How long were they in the house all together?

"*A*. They was in the house all together I would say about, at least an hour, anyway, because they went in another room. * * *

"*Q*. Did they take the property that they had taken out of Mr. Dawkins' room, out of the house?

"*A*. Yes. * * *

"*Q*. How did they get it out of the house? * * *

"*A*. Carried it out the door. They had two cars out there in the back.

"*Q*. Carried it out the back door?

"*A*. Yes. They made me help load it."

On direct examination Dawkins testified that he was not home at the time of the search and seizure.[1]

[1] The following items were seized: 12 pints booze; 48 pints assorted whiskies; 1 Magnavox AM-FM portable radio; 2 black sample cases "Presto Pride" pans; 1 paper bag containing plugs, ammunition; 1 Remington noiseless typewriter, serial number filed off; 1 leather tool bag containing piano tuning tools; 1 wooden box with miscellaneous personal papers; 1 Weller soldering kit; 1 Marlin, 30–30, and case; 1 Mossberg, 22-calibre and case; 1 Remington automatic shotgun; 1 380-Colt automatic and holster; 1 Philco portable TV; 1 Kingston vacuum cleaner; 1 J. C. Higgins, 12-gauge shotgun; 1 Nitro, 12-gauge shotgun; 12 tires and wheels.

Later the officers, with the consent of plaintiff, searched his car at the time of plaintiff's arrest and seized these additional items: 22 fifths Nature Boy wine; 5 fifths Silver Satin wine; 12 fifths Italian Swiss Colony wine; 1 whitewall Goodyear tire; 3 Ford

Upon cross-examination he was questioned with regard to 10 arrests and convictions beginning May 27, 1949, and running through December 22, 1962, most of which were for engaging in an illegal occupation and at least some of which he admitted.

Plaintiff's testimony concerning his possession of the property was evasive. On cross-examination he could not or would not identify any of the persons from whom he had received various items. He admitted that he took some in pawn and loaned money on them and that on previous occasions he had sold whiskey without a license.

It is evident from this background and from the nature of the articles seized that the police, in going to plaintiff's apartment, were diverted from their purported original purpose of finding the plaintiff to what became a search and seizure operation. It should be further noted that the taxi driver was not produced at the hearing of this matter to connect the attempted arrest of plaintiff with the person who had ridden in the cab. However, it will be recalled that the man in the cab was described as being about 25 years old. There is no description of plaintiff in the record, but he testified:

*"The Court:* And what about the Colt revolver? *"A.* I have had that for about 35 years. I can imagine it has been registered in the department for about, since 1930, something, I don't know what year, 1936 or 1937."

Plaintiff's stated ownership of a revolver for 35 years and a police record going back to 1949 would indicate a man considerably older than 25 years.

---

chrome hub caps; 1 Philco portable turntable for phonograph; 1 pair Magna-Vu Deluxe binoculars; 12 twelve-oz. bottles Carling's Black Label beer; 1 electric pliers; 3 open-end wrenches; 1 socket wrench head; and 4 mutuel account sheets. Since the goods seized from the plaintiff's automobile were a byproduct of the search of his home, albeit one with consent, they must be considered as a part of the original search.

Plaintiff contends he is entitled to the constitutional protection of article 1, § 11, of the Constitution of 1963, the pertinent portion of which reads:

"The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures."

Plaintiff contends also that under the clear authority of *Weeks* v. *United States,* 232 US 383 (34 S Ct 341, 58 L ed 652, LRA 1915B 834), and *Mapp* v. *Ohio,* 367 US 643 (81 S Ct 1684, 6 L ed 2d 1081, 84 ALR2d 933), he is entitled to the return of the property taken in violation of the above constitutional guaranty and its Federal counterpart. In *People* v. *Marxhausen,* 204 Mich 559, 573 (3 ALR 1505), this Court, referring to liquor illegally seized, said:

"Where it is made to appear before the trial that articles have been taken from the possession of the defendant in violation of his constitutional rights and by unlawful search and seizure and without any search warrant at all, that it then becomes the duty of the trial court to order the return to the defendant of the articles thus unlawfully taken."

. Defendant contends that an officer can arrest a person when a felony has been committed and the officer has reasonable cause to believe that such person committed it. Chapter 4, § 15, code of criminal procedure (CL 1948, § 764.15 [Stat Ann 1954 Rev § 28.874]). The difficulty with that proposition here is that there is no testimony to link the person in the cab with the plaintiff and, as we have seen, there is evidence to establish such person was not the plaintiff.

Defendant next contends that an officer may break open an inner or outer door of a building in order to make an arrest. Chapter 4, § 21, code of criminal

procedure (CL 1948, § 764.21 [Stat Ann 1954 Rev § 28.880]). The question, however, in view of all that transpired, is whether the activities of the police were for the purpose of making an arrest. The record before us does not support such a conclusion.

Finally, defendant says that every search and seizure made without a warrant is not unreasonable and that the Constitution prohibits only unreasonable searches and seizures.

In 47 Am Jur, Searches and Seizures, § 19, 1964 Cum Supp, p 67, it is stated:

"The United States Supreme Court decisions which are concerned with the question of the legality of the search of premises as incident to a valid arrest do not lend themselves to easy summarization: the court itself has acknowledged that 'the several cases on this subject in this Court cannot be satisfactorily reconciled.' At the same time, there are certain principles which appear relatively well settled. Thus it is clear that a search of premises without a warrant, made in connection with a lawful arrest, is not by its nature an unlawful search, nor is it by its nature lawful: *the right to make such a search is a strictly limited one; only a reasonable search is permissible, and the bounds of reasonableness are overstepped when* (1) *the premises searched are separated from the place where the arrest was made;* or (2) *the search is a 'general' and 'exploratory' one;* or (3) *the search has as its purpose the seizure of things to be used purely as evidence (as distinguished from the fruits of the crime —such as stolen property—and the means by which it was committed);* or (4) *a tremendous quantity of property is seized* (the seizure of the entire contents of a house being barred)." (Emphasis supplied.)

Upon oral argument before this Court, the attorney for defendant with commendable candor ad-

mitted that the real nature of the operation by the
police department was confiscation of property
thought to be used in illegal activities.   Defendant
attempts to justify this confiscation because PA
1917, No 273 (CL 1948, § 446.201 *et seq.* [Stat Ann
1964 Rev § 19.581 *et seq.*]), provides for the licensing
and regulation of pawnbrokers and CL 1948, § 436.42
(Stat Ann 1957 Rev § 18.1013), denies a property
right in liquor kept contrary to law.   Plaintiff was
not being proceeded against under either of these
statutes.

As was said in *People* v. *Marxhausen, supra,* p
563:

"It ought not to be necessary to recall the fact that
it is of the essence of a free government that the
individual shall be secure in his person, his home
and his property from unlawful invasion, from un-
lawful search, from unlawful seizure.   The writing
of these provisions into the Federal Constitution,
into every constitution of every State in the Union
was not an idle ceremony.   With a clearness of
vision our forefathers provided for a lawful search
and seizure, one supported by oath or affirmation,
describing the place to be searched and the person
or things to be seized; and in the same section safe-
guarded the rights of the individual by inhibiting
unreasonable and unlawful search.   They provided
an orderly manner for search and seizure and pro-
hibited all others."

It is evident the police concluded a more effective
way of dealing with plaintiff's activities than arrest-
ing him was to confiscate his capital.   Such a search
and seizure operation that results in confiscating
property and placing the burden on a citizen to
secure its return cannot be condoned.   This proceed-
ing cannot be turned into an inquisition of plaintiff
in which, to effect the return of property in his
possession, he is deprived of the presumption of

innocence and compelled to testify against himself. For the actions of the police to be upheld, they must proceed by due process of law and not by specious or colorable authority.

"An arrest may not be used as a pretext to search for evidence." *United States* v. *Lefkowitz,* 285 US 452, 467 (52 S Ct 420, 76 L ed 877, 82 ALR 775).

To this we would add, an arrest may not be used as a pretext to confiscate.

It is suggested that plaintiff has not chosen the correct writ and should now be dismissed for failure to bring an action in replevin.[2] Even if the assumption were valid,[3] it still would not affect this appeal. This Court has repudiated the medieval practice of attaching consequences to a litigant's choice of a writ. If two writs would produce identical records upon a determinative issue[4] the failure to choose the correct writ is the type of error which does "not affect the substantial rights of the parties", and should be disregarded. CLS 1961, § 600.2301 (Stat Ann 1962 Rev § 27A.2301). See, also, GCR 1963, 529.1. The seizure of the personal property involved here would not be any less unreasonable if we were making the decision based on an appeal taken from a different writ.

---

[2] See, GCR 1963, 757; CLS 1961, § 600.2920 (Stat Ann 1962 Rev § 27A.2920).

[3] Mandamus has generally been accepted by this Court in this type of action without comment. *Bitonli* v. *Wayne County Auditors,* 311 Mich 322; *Martucci* v. *Detroit Police Commissioner,* 322 Mich 270. For specific approval of mandamus in this type of proceeding, see *Taylor* v. *Isabella Circuit Judge,* 209 Mich 97, 101, 102; *Robinson* v. *Inches,* 220 Mich 490, 492.

[4] Mandamus, like replevin, is a legal action. 55 CJS, Mandamus, § 2(b), p 17. Pursuant to GCR 1963, 714.2(3), the defendant answered the complaint as he would in "an ordinary civil action." Pleadings under a writ of replevin would also conform to this standard. GCR 1963, 110.3. But even if we ignore these similarities, the fact remains that the reasonableness of the seizure would have been equally relevant to a replevin action as it was to a suit in mandamus. CLS 1961, § 600.2920(1) (Stat Ann 1962 Rev § 27A.2920[1]).

The cause should be reversed and remanded for entry of an order in accordance with this opinion. Costs to appellant.

T. M. KAVANAGH, C. J., and SOURIS, J., concurred with ADAMS, J.

O'HARA, J.  A man's home is his castle safe indeed from what is constitutionally designated *"unreasonable* searches and seizures." No one, dedicated by his elected entrustment to the guardianship of this cornerstone of individual liberty, can acquiesce in the most minuscule chip therefrom. The cornerstone, be it remembered, is not safety from searches and seizures—only from *unreasonable* searches and seizures.

In this case my esteemed colleague has itemized the contents of the castle here involved (see his footnote 1). It may perhaps be said that the contents were atypical and bordered on the bizarre for a dwelling place, which of course is the subject of the constitutional protection. Abiding this, however, appellant did live there and thus, I suppose, is entitled to claim the constitutional privilege for it and himself. Perhaps, with the dangers said to be extant in our largest metropolis, it is not uncommon to stock one's home, arsenal like, with shotguns, rifles and revolvers. In the Upper Peninsula few homes are without firearms of a sort, albeit not usually quite so many as were cached here. Too perhaps, it is the practice in the urban areas to file the serial numbers off portable typewriters and to do one's own piano tuning. *De gustibus non est disputandum.*

It has not been established in this case, as I read the record, however, that it is within the accepted social mores in Detroit to remove the tires from

one's car and have them delivered to one's castle by taxi. Of course, it is not illegal to keep spare parts for one's motor vehicle in the home. No untoward inference should be drawn from the fact that appellant kept handy in his flat 12 extra tires and wheels of varying sizes. However, it is suggested by the record that the theft of tires and wheels is not unknown in the concerned area.

In the castle too, as is often the case, certain incidents of social entertaining were present in generous amount. I would not be recorded as favoring judicial limitation on that amount. This should always remain a question of personal judgment—and capacity.

Appellant, apparently a careful fellow, also insured against being caught short away from his castle by carrying in his car, searched, it is conceded with his consent, 39 fifths of spiritus frumenti. Against mechanical failure he likewise carried electric pliers, various wrenches, and 3 spare hub caps. The items in his car, my Brother says, were a "by-product of the search of his home."[1] On the same authority he cites for this conclusion, I dissent . therefrom.

But, will say the careful constitutionalist, what has all this to do with an illegal search and an illegal seizure? Surely, the fruits of an illegal search and seizure cannot retroact to justify them. I agree.

Was the search and accompanying seizure legal, irrespective of its fruit? I would hold unequivocally it was. The searching officers had the following information when they made the search: At 7:40 a.m., Donald Dombey reported to the Detroit police that between 11:30 p.m. of the previous night and 7:30 a.m. the following morning, the spare tire was stolen

---

[1] Also, a half case of beer, a beverage not to my liking but relished, I am told, by many.

from his convertible. The theft was accomplished by cutting the top of the car. At 4:45 a.m. the same day, John Grant, an identified known taxi driver, reported to the police that he drove a fare to an alley where the fare left the cab and returned with a tire and wheel. The cabbie was then directed to drive his fare to 5740 Beechwood, where the fare took the tire and wheel up the rear stairs to the upper flat of the building. The fare told the cabbie that if he wanted to make a buck, he, the driver, should meet him, the fare, every night. Crucial to my conclusion is this undisputed testimony of the investigating officer:

"*Q.* Were you possessed of this information when you went to James Dawkins' home on February 26th?

"*A.* Yes, sir, this information was assigned—

"*Q.* As the investigating officer, did you have a complaint from a Mr. Dombey, Donald Dombey?

. . "*A. Mr. Dombey's complaint was assigned to me at the same time as this information from the cab driver was assigned to me by my lieutenant.*" (Emphasis supplied.)

Now then, the officer knew that at an early hour in the morning, a tire retrieved from an indeterminate place in an alley was delivered to an upstairs flat at a specific address. He knew that the same night a tire and wheel had been stolen in the same vicinity. He went there immediately after receiving the interlocking information of theft and presumptive illegal disposition. Can it seriously be contended that the officer did not have probable cause to believe that an offense of some degree had been committed by a person unknown to him at the place where the tire had been taken upstairs? Was it his duty to wait until he could go before a magistrate, obtain a warrant and then make his search? Must the

police wait until a miscreant has ample time to secrete or dispose of presumptively stolen goods to seek it out? Whatever his motive in going to the described premises might have been, in my view he had a right to entry, forcible or not, for the reason that he had reasonable ground to believe an offense was being committed therein. In *People v. Hagadorn,* 255 Mich 121, at p 124, we said:

"The facts necessary to be shown to uphold a search without a warrant must be strong enough to support the issuance of a search warrant."

Assuming the constitutional question here were controlling (which I do not think is the case) I find no constitutional violation to have been shown. Can it be said the officer here did not at the time of search have facts necessary to support the issuance of a warrant?

In addition to the foregoing, it should be added, that there was a clear-cut issue of fact before Judge Wise, whose determination thereof we do not reverse unless against the great weight of the evidence. The issue was whether the search here was not entirely with the consent of the apparent custodian of the premises. It is not suggested he was a trespasser or otherwise there against the will of the tenant. He testified he was living there. The officers testified they were, in effect, admitted to the premises. I know of no rule of law which requires a trial judge to disregard police testimony, nor to accord it any less credibility than that of another witness.

Be this all as it may, what this case really involves is the denial by a trial judge of an application for a writ of mandamus. Appellant, ably represented, chose this remedy to recover possession of the involved property. Appellant in his brief argues to us:

"The record indicates that the items taken from petitioner belong to petitioner."

If this be the ground to support issuance of mandamus to compel its return, it may be supposed appellant would have to establish his title, or at least his possessory right thereto. The circuit court held a hearing. Petitioner's testimony on this point is characterized by my Brother as "evasive." I accede to this euphemism and quote excerpts:

"*Q.* Mr. Dawkins, continuing your testimony of last week, let me ask you if you have any knowledge, or do you know that the police took from your home a United States Royal tire and wheel, size 800 by 14?

"*A.* I know they taken some tires.

"*Q.* Taken one out of your kitchen, do you know about that tire?

"*A.* It is possible. I don't recall about that now.

"*Q.* Would you say, if there was a tire in your kitchen the morning of February 26th when the police entered there, that it was your tire and wheel?

"*A.* I can't recall a tire being in the kitchen.

"*Q.* Well, it was in your house?

"*A.* Well, it is possible but I can't recall offhand right now.

"*Q.* And you think if it was in your house, in your kitchen, it would have been your tire and wheel?

"*A.* Well, it would either be mine or be left in my possession, *more or less.*" (Emphasis supplied.)

The best that could be said for this testimony is that by it petitioner established his title or possessory right to the tire—*more or less.*

Further:

"*The Court:* You don't know the names of any people that left this merchandise with you?

"*A.* I know the people when I see them.

"*The Court:* Then you have really been loaning money on this merchandise, too, have you?

"*A.* I wouldn't say loaned money.

*"The Court:* Well, you have been giving them money on the merchandise, and if they gave you something for keeping it for them you would take it, and if they didn't give you anything you wouldn't charge them?

*"A.* That is right."

If we mandamus Judge Wise to compel him to accept this type of testimony to establish petitioner's title or right to possession, we have in verity said mandamus is no longer a discretionary writ, but a writ of right to a petitioner on application.

I seem to recall an action known as replevin.[2] It is of ancient lineage. 19 MLP, Replevin, § 1, pp 490, 491, and § 4, p 500:

"Replevin is the statutory remedy of one desiring to obtain possession of goods or chattels which he claims are his. * * * The action is founded on an unlawful detention whether or not there was an unlawful taking. * * * The right to maintain replevin has been denied where the defendant [plaintiff?] has no legal title to the property sought, or fails to show any right to immediate possession thereof."

If the Detroit police department unlawfully took, or was unlawfully detaining petitioner's property, a tailor-made statutory remedy[3] to recover it was available to him.

I would affirm the trial judge, with costs to the appellee.

DETHMERS and BLACK, JJ., concurred with O'HARA, J.

KELLY and SMITH, JJ., concurred in result.

---

[2] The action is now known as "Claim and Delivery" but its substance is unchanged. (GCR 1963, 757).

[3] Now called claim and delivery, see PA 1961, No 236 (CLS 1961, § 600.2920 [Stat Ann 1962 Rev § 27A.2920]).—REPORTER.